# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**HUNTER F. FLOOD**                                                            **PLAINTIFF**

**v.**                                                  Civil No. 3:20-cv-817-HTW-BWR

**KILOLO KIJAKAZI,**[1]
*Acting Commissioner of Social*
*Security Administration*                                              **DEFENDANT**

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

BEFORE THE COURT is the [1] Complaint filed by Plaintiff Hunter Flood challenging the Acting Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits. Plaintiff has also filed a [14] Memorandum in Support. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, has filed a [20] Response in Opposition, and Plaintiff a [21] Response in Support. Having considered the memoranda, submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends affirming the Acting Commissioner of Social Security's decision and dismissing this case with prejudice.

## I. BACKGROUND

Plaintiff Hunter Flood ("Plaintiff" or "Flood") filed an application for Title II benefits on April 13, 2018. Admin. R. [12] at 24. Flood alleges that his disability began

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

on April 2, 2018. *Id*. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Defendant" or "Commissioner"), denied Flood's application initially and upon reconsideration. *Id*. Flood requested a hearing before an Administrative Law Judge ("ALJ"), who held the hearing via video, on May 4, 2020. *Id*. Plaintiff was represented by counsel at the hearing. *Id*.

The ALJ rendered a decision unfavorable to Flood on May 12, 2020, finding that Flood was not under a disability within the meaning of the Social Security Act from April 2, 2018, through September 30, 2019, the date Flood was last insured. *Id*. at 37. The Appeals Council denied Flood's request for review, *id*. at 6-9, and he filed the instant petition for judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), *see* Compl [1].

## II.  DISCUSSION

### A.    Standard of Review

The Court's review of the Commissioner's denial of social security benefits is limited to an inquiry into "whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). Evidence is substantial if "a reasonable mind would support the conclusion[;]" there "must be more than a scintilla, but it need not be a

preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (quotation omitted).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Court must, however, despite its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision . . . and whether substantial evidence exists to support it." *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). But "procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)(internal citation and quotations omitted). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

B.    **Standard for Entitlement to Social Security Benefits**

A claimant must prove that he or she suffers from a disability in order to be qualified for benefits. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Social Security Act defines "disability," in the relevant part, as the

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months
> . . .

42 U.S.C. § 423(d)(1)(A). The Commissioner typically employs a five-step sequential

evaluation process to determine whether a claimant is disabled within the meaning

of the Social Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d

716, 718 (5th Cir. 2002). This five-step analysis is as follows:

> First, the claimant must not be presently working. Second, a claimant
> must establish that he has an impairment or combination of
> impairments which significantly limit his physical or mental ability to
> do basic work activities. Third, to secure a finding of disability without
> consideration of age, education, and work experience, a claimant must
> establish that his impairment meets or equals an impairment
> enumerated in the listing of impairments in the appendix to the
> regulations. Fourth, a claimant must establish that his impairment
> prevents him from doing past relevant work. Finally, the burden shifts
> to the [Commissioner] to establish that the claimant can perform
> relevant work. If the [Commissioner] meets this burden, the claimant
> must then prove that he cannot in fact perform the work suggested.

*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *see also Garcia v. Berryhill*, 880

F.3d 700, 704 (5th Cir. 2018). A claimant bears the burden of proof with respect to

the first four steps of the inquiry; the burden shifts to the Commissioner at step five.

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

## C.    The Administrative Law Judge's Decision

In his May 12, 2020, decision, the ALJ applied the five-step sequential

analysis, set forth in 20 C.F.R. 404.1520(b)-(f), and determined that Plaintiff was not

disabled. The ALJ found at the first step that Flood had not engaged in substantial

gainful activity after the alleged onset date of April 2, 2018. Admin. R. [12] at 26. At

4

the second step, the ALJ found that Flood had the following severe impairments: chronic obstructive pulmonary disease, cerebrovascular accident, emphysema, and seizure disorder. *Id*. The ALJ also found that Flood had the non-severe impairment of cirrhosis of the liver. *Id*. at 27. The ALJ held that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by [Social Security Ruling] 85-28." *Id*.

At the third step, the ALJ determined that Flood did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 27. Next, the ALJ examined the record and determined that Flood had the residual functional capacity[2] ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b)[3] except the individual can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, crouch, kneel, and climb ramps and stairs. He should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, noise, and vibration. He must avoid even moderate exposure to fumes, odors, dust, and other pulmonary irritants. He should not work at heights or around hazards. He should perform only simple, repetitive tasks, defined as the ability to understand, remember, and carry out simple tasks.

*Id*. at 28.

At the fourth step, the ALJ concluded that Flood was unable to perform any past relevant work. *Id*. at 35. At the fifth step, the ALJ concluded that based on Flood's age, education, work experience, and RFC, there were jobs existing in

---

[2] The residual functional capacity is defined as "the most [an individual] can still do despite [their] limitations" . . . "based on all the relevant evidence in [their] case record." 20 C.F.R. § 404.1545 (a)(1).
[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b).

significant numbers in the national economy that he could perform. *Id*. at 36. Accordingly, the ALJ determined that Flood was not disabled within the meaning of the Social Security Act. *Id*. at 37. Plaintiff now appeals that decision to this Court. Compl. [1].

III. <u>ANALYSIS</u>

Plaintiff's briefs raise numerous issues with the Commissioner's final decision. Those issues are properly placed into three categories: (1) whether the ALJ erred by failing to define the term "hazards" in the RFC determination; (2) whether the ALJ erred by relying on the vocational expert's ("VE") testimony at step five of the sequential evaluation; and (3) whether the ALJ erred at step five by failing to consider if a borderline age situation existed. Mem. [14]; Resp. [21]. The Court addresses each issue in turn.

**A.    The ALJ did not Commit Legal Error in Determining Plaintiff's RFC, and Substantial Evidence Supports that Determination.**

Plaintiff first alleges error in the ALJ's RFC determination. Mem. [14] at 11. Specifically, Plaintiff contends that the ALJ failed to define the term 'hazards' in the RFC or anywhere else in the written decision. Mem. [14] at 11. Thus, Plaintiff asserts that the ALJ committed legal error, and the RFC determination is not supported by substantial evidence. *Id*.

As an initial matter, it is worth noting the absence in Plaintiff's briefs of any binding case law supporting his position that an ALJ's failure to include specific explanations for each word or phrase in an RFC determination constitutes a legal error. However, Plaintiff does offer a case from the Central District of California,

*Novoa v. Colvin*, Civ. No. 2:13-cv-219, 2014 WL 3854369 (C.D. Cal. Aug. 6, 2014), in support.[4] Mem. [14] at 11. There, the court found the "case complicated [ ] by the fact that the ALJ did not expand upon his definition of 'hazard,' either in the RFC or in the hypothetical to the VE." *Novoa*, 2014 WL 3854369, at *8. Because, as explained below, the ALJ did expand on the hazards to be avoided, such a complication does not exist in this case; therefore, *Novoa* is factually inapposite.

Notwithstanding, the undersigned turns to the merits of Plaintiff's argument. An individual's RFC assessment is a determination of the most the individual can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 C.F.R. § 404.1545(a)(1). The individual's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

It bears reminding, however, that this Court's inquiry "is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). Because the ALJ applied the correct legal standard in crafting Plaintiff's RFC and the RFC determination is supported by substantial evidence, that determination must be upheld. *See Richardson*, 402 U.S. at 390.

---

[4] Plaintiff incorrectly identifies the case as "*Lynn v. Comm'r of Soc. Sec.*" Mem. [14] at 11.

Here, the ALJ properly assessed Plaintiff's RFC by considering all of the relevant evidence, including the opinions of examining and non-examining physicians, as well as the combination of all of his alleged impairments. Admin. R. [12] at 28-35. The ALJ carefully reviewed the objective medical evidence. *Id.* at 29-35. The ALJ also specifically acknowledged that in making the RFC assessment, he must and did "consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and [Social Security Ruling] 16-3p."[5] *Id.* at 28. Thus, the ALJ applied the proper legal standards in determining Plaintiff's RFC.

Next, the undersigned turns to whether substantial evidence supports the ALJ's RFC determination. The RFC determination provides, in the relevant part, that Plaintiff "should not work at heights or around hazards." Admin. R. [12] at 28. In making that determination, the ALJ considered the opinion of Dr. Miller Jennings to the extent it was consistent with other objective medical evidence and Plaintiff's testimony. *See, e.g.*, Admin. R. [12] at 29, 31, 33-35. After examining Plaintiff, Dr. Jennings concluded that if Plaintiff's history of seizures were accurate, limitations related to driving, handling heavy machinery, and working at heights would be necessary. *Id.* at 1557. Plaintiff testified that "he suffered multiple seizures resulting

---

[5] 20 C.F.R. § 404.1529 provides the standard ALJs employ to evaluate an individual's symptoms in making a disability determination. While Social Security Ruling ("SSR") 16-3p explains the two-step process employed by the Social Security Administration in evaluating an individual's symptoms. 2017 WL 5180304 (Oct. 25, 2017).

in impaired memory, imbalance, impaired speech, and the inability to drive or climb." *Id.* at 29. As the ALJ explained, however, Plaintiff's assertion that he could not drive due to his seizures was unsupported by the objective medical evidence. *See id.* at 34-35. The ALJ noted that Plaintiff denied experiencing any seizures at his May 4, 2019, visit with Dr. Jennings. *Id.* at 31. The ALJ also noted that Plaintiff had received treatment for those occurrences, and "EEG studies found no evidence of seizure activity." *Id.* at 34; *see, e.g.*, *id.* at 1017 ("No evidence of any seizure activity noted."); *id.* at 1416 (same). The ALJ further noted Plaintiff's June 10, 2019, report to doctors at St. Dominic Neuroscience Center that his condition had significantly improved since starting seizure medications. *Id.* at 31.Thus ,the ALJ determined that Plaintiff's "seizure activity appeared to resolve with medication titration." *Id.* at 34. The ALJ concluded that a limitation against working at heights and around hazards was warranted based on this evidence. *Id.* at 35. Therefore, substantial evidence supports the disputed portion of the ALJ's RFC determination. For these same reasons, Plaintiff's assertion that the ALJ failed to elaborate on the hazards to be avoided lacks merit.

Even if the argument could be made that the ALJ should have provided greater specificity in the actual RFC statement, that would not constitute a reversible error. "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler*, 501 F.3d at 448. Because the ALJ explained hazards to be avoided in the RFC analysis, Plaintiff's substantial

rights were not affected by the failure to define the term in the RFC statement. Therefore, no reversible error would exist.

In sum, Plaintiff's argument that the ALJ failed to define the term "hazards" in the RFC determination is without merit. The ALJ applied to proper legal standard in determining Plaintiff's RFC, and substantiation evidence supports the disputed portion of the RFC. Accordingly, remand is not warranted on this ground.

## B.    The ALJ did not err in Relying on the VE's Testimony at Step Five.

Plaintiff next challenges the ALJ's decision at step five of the sequential evaluation, arguing essentially that the ALJ posed a defective hypothetical to the VE. Mem. [14] at 11. Plaintiff also challenges the step five decision on the ground that the ALJ erred in finding work exists in significant numbers within his RFC based on the VE's testimony. Mem. [14] at 10-12. Specifically, Plaintiff contends that the VE's testimony was unreliable because it identified jobs that conflicted with the Dictionary of Occupational Titles ("DOT") and his RFC. *Id*. at 10. Plaintiff further contends that the ALJ erred by failing to inquire whether conflicts existed between the VE's testimony and the DOT. *Id*. at 11-12.

### 1.    *The Hypothetical Question Posed to the VE was not Defective.*

First, Plaintiff argues that the ALJ posed a defective hypothetical question to the VE. Mem. [14] at 11. A hypothetical question to a VE is defective and therefore cannot provide substantial evidence supporting the ALJ's determination if (1) the hypothetical fails to reasonably incorporate all the disabilities of the claimant recognized by the ALJ; and (2) the claimant or his representative is not afforded the

opportunity to correct deficiencies in the question. *See Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001) (citing *Bowling*, 36 F.3d at 436).

At the administrative hearing, the ALJ stated the following:

> . . . [a]ssume an individual, he's currently 54 and was 54 at his date last insured. One moment. The individual has 13 years of education and the same past work you just described. In this hypothetical, assume the individual could perform the full range of light exertional work. Assume that the individual should not climb ladders, ropes or scaffolds, may frequently climb ramps and stairs. May frequently balance, stoop, crouch, crawl and kneel. And let me make clear, this is at the date last insured, the end of September, that's when this is being give, the date is being given for.
>
> Also, the individual should avoid concentrated exposure to extreme cold and extreme heat. All right, also the individual should avoid concentrated exposure to wetness, also humidity, noise and vibration. Also should avoid even moderate exposure to fumes, odors, dust and other pulmonary irritants. The individual should not work at heights or around hazards. One moment, one other restriction. The individual should perform only simply repetitive tasks by which it is meant that the claimant can understand, remember and carry out simple tasks.
>
> One moment again. All right, would someone with this profile be able to perform the past work of the claimant?

Admin. R. [12] at 60-61. The VE responded that such a person would not be able to perform Plaintiff's past relevant work. *Id.* at 61. However, when asked whether that same individual could perform other work in the national economy, the VE responded that they could perform the jobs of electrical assembler, counter attendant, and assembler of small parts. *Id.* at 61-62.

Upon review, the undersigned finds the hypothetical posed to the VE was not defective. The above hypothetical reasonably incorporated all of the limitations recognized in the RFC, *see supra* Section II.C., and Plaintiff's counsel had the

opportunity to cross-examine the VE regarding any deficiencies in that hypothetical, Admin. R. [12] at 63-64. While Plaintiff's counsel asked how the VE's responses would have changed if the hypothetical individual required frequent supervision or was limited to a sedentary level of exertion, he did not mention the limitation against working around hazards. *Id.* Because the hypothetical was not defective it provides substantial evidence in support of the ALJ's determination.

2.   *No Conflict Existed Between the VE's Testimony and the DOT or RFC.*

Next, Plaintiff argues that the VE's testimony conflicts with the DOT and the RFC because the jobs identified "may" expose him to hazardous conditions. Mem. [14] at 10. "The DOT 'comprise[s] a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs.'" *Ruffin v. Colvin*, Civ. No. 3:16-cv-18, 2017 WL 536549 (quoting *Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp.2d 607, 612 (E.D. Tex. 2009)). The Commissioner recognizes the DOT as authoritative and routinely relies on them "for information about the requirements of work in the national economy." Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *see also* 20 C.F.R. § 404.1566(d)(1).

Contrary to Plaintiff's assertion, no conflict exists between the VE's testimony and the DOT or RFC. As previously explained, the RFC determination included that Plaintiff should avoid working at heights or around hazards, which the RFC analysis explained meant avoiding handling heavy machinery. Admin. R. [12] at 33. In response to the ALJ's hypothetical – which included the limitation against working

at heights or around hazards – the VE testified that Plaintiff could perform other work as an electrical assembler, counter attendant, and assembler of small parts. *Id.* 61-62. The DOT listing for each of these positions plainly establishes that they do not involve working at heights or around hazards. *See* Electrical Accessories Assembler, DOT. No. 729.687-010, 1991 WL 679733 (Jan. 1, 2016) (providing moving mechanical parts and high exposed places are "Not Present – Activity or condition does not exist); Lunchroom or Coffee Shop Attendant, DOT No. 311.477-014, 1991 WL 672684 (Jan. 1, 2016) (same); Small Products Assembler, DOT No. 706.684-022, 1991 WL 679050 (Jan. 1, 2016) (same). Thus, Plaintiff's argument that the VE's testimony conflicts with the DOT because the jobs identified "may" involve working in hazardous conditions lacks merit.[6] By extension, Plaintiff's argument that the jobs identified by the VE conflict with the RFC also lacks merit.

Out of caution, however, the undersigned has also considered whether any of the hazards identified in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), are present in the three jobs identified by the VE. The Commissioner recognizes the SCO as authoritative. SSR 00-4p, 2000 WL 1898704, at *2; 20 C.F.R. § 404.1566(d)(1). The

---

[6] The undersigned notes that the job of Lunchroom or Coffee Shop Counter Attendant, DOT No. 311.477-014, provides that "Other Env[ironmental] Cond[itions] – Exists up to 1/3 of the time." 1991 WL 672684. The SCO defines a condition that exists up to one-third of the time as being "occasionally" present. U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. ID-2 (1993). Assuming arguendo that the occasional existence of other environmental conditions foreclosed Plaintiff's ability to perform this job – the Court has not located any authority to support that proposition – the outcome would remain unchanged, as Plaintiff can still perform the other two jobs identified by the VE. *See Lucia A. v. Saul*, Civ. No. 4:19-cv-04685, 2021 WL 707672, at *8 (S.D. Tex. Jan. 26, 2021) (finding that substantial evidence supports the ALJ's step five determination where one of the jobs identified by the VE satisfied Plaintiff's limitations and existed at significant numbers in the economy).

13

SCO identifies "hazards" to include: "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. D (1993); *see generally* SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996). A review of each DOT listing establishes the absence of any of the hazards above.

In short, the VE's testimony did not create a conflict. Plaintiff's RFC imposed a limitation to avoid working at heights or around hazards. The VE testified that an individual with Plaintiff's RFC could perform other work as an electrical assembler, counter attendant, and assembler of small parts. The DOT listing for each position establishes that they do not involve working around heights or hazards. Therefore, the VE's testimony did not conflict with the DOT or the RFC, and the jobs identified do not exceed Plaintiff's RFC limitations. Accordingly, Plaintiff's argument that a conflict existed between the VE's testimony, and the DOT and his RFC is without merit, and remand is not warranted on these grounds.

On this issue, the undersigned finds the Fifth Circuit's decision in *January v. Astrue*, 400 F. App'x. 929 (5th Cir. 2010) (per curiam), instructive. In that case, as in this one, the claimant's RFC included limitations against working around heights and hazards. *Id.* at 931. The claimant argued, as Plaintiff does here, that those non-exertional limitations precluded her ability to perform light work. *Id.* at 932. The

panel rejected that argument, finding it foreclosed by Social Security Ruling 85-15.[7] *Id*. at 932.

In making that determination, the panel specifically considered the following example provided in SSR 85-15: "a person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." *Id* (citing SSR 85-15, 1985 WL 56857, at *8 (Jan. 1, 1985). The panel concluded that, similar to that hypothetical individual, the claimant's "environmental limitation d[id] not have a significant effect on the light work available to her in the national economy, and her substantial rights were not affected by the ALJ's error." *Id*.

The panel then considered the claimant's argument that SSR 85-15 did not apply because her limitation was to "*all* machinery and not just *dangerous* machinery." *January*, 400 F. App'x. at 932 (emphasis in original). In rejecting that argument, the panel reasoned that an RFC limitation to avoid all exposure to hazards, which appears in the standard RFC checklist, "is shorthand for 'dangerous machinery,' and that SSR 85-15 is applicable." *Id*. In making that determination, the panel reviewed the SCO and concluded that "a restriction from dangerous machinery comports with other 'hazards' described" therein. *Id*. The panel concluded that remand "would serve no purpose because claimant's environmental restriction does not significantly erode her potential job base at the light work level." *Id*.

---

[7] SSR 85-15 generally provides a framework by which solely non-exertional impairments are evaluated in the context of the RFC. 1985 WL 65857 (1985).

In this case, Plaintiff's argument that his non-exertional limitations prevent him from performing light work is likewise foreclosed by SSR 85-15. One of Plaintiff's severe impairments is the same impairment possessed by SSR 85-15's hypothetical individual, *i.e.*, seizure disorder. In this case, after considering all of the evidence, including the objective medical evidence, the ALJ reached a similar determination, concluding that a limitation against working at heights or near dangerous moving machinery was warranted. *Id*. at 28. Because SSR 85-15 explicitly provides that such an individual is not precluded from performing light work, the undersigned likewise finds this argument foreclosed.

Plaintiff also advances an analogous argument to the *January* plaintiff: that his limitation on working around "hazards" essentially prevents him from performing any occupation where a hazard "may" exist. Mem. [14] at 10. To begin with, Plaintiff cites no authority to support the proposition that the VE must identify jobs devoid of any and every conceivable hazard. Nor has he cited any authority to support the proposition that if a Plaintiff can *ex post facto* name a hazard that "may" exist, he can establish a reversible error. Notwithstanding, as the *January* panel explained, a limitation against "hazards," necessarily means a restriction on working around dangerous machinery. And the *January* panel concluded, as the undersigned does here, that such non-exertional environmental restrictions against working at heights or around hazards do not significantly erode Plaintiff's potential job base at the light

work level.[8] For those reasons, the undersigned finds *January* supportive of the determination in the present case.

### 3. *The ALJ Fulfilled his Duty to Inquire into Whether a Conflict Existed Between the VE's Testimony and DOT.*

Under this same issue, Plaintiff argues that the ALJ committed reversible error by failing to inquire whether a conflict existed between the VE's testimony and the DOT.[9] Mem. [14] at 11. According to Plaintiff, a conflict did exist, and the ALJ was required to resolve that conflict by eliciting a reasonable response from the VE to explain the conflict. *Id.*

Social Security Ruling 00-4p[10] imposes "[ ] an affirmative responsibility" on the ALJ "to ask about 'any possible conflict' between VE evidence and the DOT . . . before relying on VE evidence to support a determination of not disabled." *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (quoting *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). Thus, as part of the duty to fully develop the record at the

---

[8] The *January* panel's analysis arose in the context of determining whether the ALJ's reliance solely on the Medical-Vocational Guidelines ("Guidelines") to support a non-disability determination constituted a harmless error. *January*, F. App'x. at 931. In this case, the ALJ relied on the VE's testimony. However, assuming arguendo that Plaintiff could establish an error based on that reliance, that error would prove harmless for the same reasons.

[9] In support of this argument, Plaintiff directs the Court's attention to a case from the Eastern District of California, *Tair Ten Funches v. Astrue*, Civ. No. 1:20-cv-819, 2011 WL 1497068 (E.D. Cal. Apr. 11, 2011). Mem. [14] at 11. In that case, the court concluded that remand was required because the ALJ's failure to inquire from the VE whether a conflict existed between her testimony and the DOT rendered it unable to determine whether substantial evidence supported the step five determination. *Funches*, 2011 WL 1497068, at *6. Because the ALJ, in this case, did inquire whether a conflict existed, *Funches* is factually inapposite.

[10] Social Security Ruling 00-4p provides, in the relevant part, as follows: "[o]ccupational evidence provided by a VE or VS [vocational expert or vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." 2000 WL 1898704, at *2 (Dec. 4, 2000).

hearing level, the ALJ must inquire whether there is such an inconsistency on the record. SSR 00-4p, 2000 WL 1898704, at *4.

At the hearing, the VE testified that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform other work that existed in significant numbers in the national economy, such as an electrical assembler, counter attendant, and assembler of small parts. Admin. R. [12] at 61-62. The ALJ then asked the VE if "the way you described these jobs, are they described in a similar manner in the [DOT]," to which the VE responded, "[t]hey are, [y]our honor." *Id*. at 62. Thus, the ALJ fulfilled her affirmative obligation to inquire whether an inconsistency existed between the VE's testimony and the DOT. *See Lee v. Kijakazi*, Civ. No. 3:20-cv-819, 2022 WL 2753160, at *4 (S.D. Miss. Jul. 14, 2022) ("Because the VE's testimony does not seem to conflict with the DOT, the ALJ was not required to inquire more.").

Yet, the gravamen of Plaintiff's complaint is not that the ALJ failed to inquire whether any inconsistencies existed but that the ALJ did not use the right words in making such an inquiry. Mem. [21] at 2-3. Similarly, Plaintiff argues that the VE essentially failed to provide an elaborate enough description of each job, what they entail, and the potential hazards they may involve. *Id*. at 3. Missing from Plaintiff's argument, however, is any supporting case law. Nor has the Court located any to support the proposition that the ALJ must use specific "magical words" to satisfy the affirmative obligation imposed by SSR 00-4p. The Court has also not located any authority to support the proposition that the VE must essentially read out the DOT

listing for each job and state any conceivable hazard that may exist. Thus, these arguments lack merit. And concluding that remand was warranted based on such grounds would almost certainly exceed the limited nature of this Court's review. *Whitehead*, 820 F.3d at 779.

Even if Plaintiff's arguments possessed some merit, they would not warrant reversal. Courts will "not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (per curiam) (emphasis added) (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Social Security Ruling 00-4p provides that if a conflict is identified, the ALJ must explain how it was resolved in the decision. 2000 WL 1898704, at *4. A direct conflict may arise when the VE's testimony regarding the exertional or skill level of a particular job is facially different than that indicated in the DOT, or when the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT. *See Carey*, 230 F.3d at 145. Conversely, implied conflicts and exceptions occur under various unique circumstances when VEs are called to testify as to an individual claimant's capabilities. *See id.* at 146-47. Because the DOT cannot satisfactorily address every such situation, claimants are not

permitted to scan the record for implied or unexplained conflicts and then present the conflict as a reversible error. *See id*. For the reasons explained previously, Plaintiff has failed to establish any resulting prejudice from the ALJ's alleged failure to develop the record. Therefore, even if an error existed, remand would not be warranted.

Moreover, by Plaintiff's own admission, he did not raise this alleged issue during cross-examination of the VE or at any other point in the hearing. Mem. [14] at 11. By failing to raise this issue, Plaintiff deprived the ALJ of the opportunity to address and explore it. *Jasso v. Barnhart*, 102 F. App'x. 877, 878 (5th Cir. 2004). Plaintiff should now not "be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146-47.

## C.    The ALJ did not err at Step Five in Failing to Consider Whether a Borderline Situation Existed.

Plaintiff also challenges the ALJ's decision at step five of the sequential evaluation on the ground that the ALJ erred by failing to consider whether a potential borderline age situation existed. Resp. [21] at 5.[11] Specifically, Plaintiff argues that because he reached the age of 55 shortly after the date the ALJ rendered his decision, the ALJ was required to address whether a borderline situation existed. *Id*.

---

[11] In his original Memorandum, Plaintiff offered an extensive discussion in support of this assignment of error. *See* Mem. [14] at 12-20. By his own admission, however, the foundation of that argument – that Plaintiff was 54 years and 9 months old on the date last insured – was incorrect. Resp. [21] at 5. Thus, the flawed factual foundation forecloses those arguments.

At the fifth step of the sequential evaluation process, the ALJ considers Plaintiff's age as one of the relevant vocational factors. *See* 20 C.F.R. § 404.1563(a). An individual can be classified into one of three categories: (1) a younger person (18–49); (2) a person closely approaching advanced age (50–54); or (3) a person of advanced age (55 or older). *See* § 404.1563(c)-(e). The applicable age category is determined based on the relevant disability period. § 404.1563(b).

The Regulations also mention the possibility of a "borderline situation" where a mechanical application of the age categories may be inappropriate. § 404.1563(b). The Regulations explain that "[i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination ... that you are disabled, *we will consider* whether to use the older age category." 20 C.F.R. § 404.1563(b) (emphasis added). And the ALJ has no discretion to ignore that command. *See, e.g., Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015) ("Under our binding precedent, Social Security administrative hearings must follow their own policies.").

The meaning of "within a few days to a few months" is not explicitly defined by statute or the governing regulation. Nor has the Fifth Circuit specifically addressed the meaning of "within a few days to a few months." However, the Fifth Circuit has noted the Social Security Administration's issuance of a sub-regulatory guidance document called Program Operations Manual System ("POMS") DI 25015.006. Subpart B of POMS DI 25015.006 specifies that "a few days to a few months" should mean "a period not to exceed six months." *Schofield v. Saul*, 950 F.3d 315, 318 n. †

(5th Cir. 2020) (citing POMS DI 25015.006, Borderline Age, https://secure.ssa.gov/poms.nsf/lnx/0425015006 (effective starting July 6, 2017)). The Fifth Circuit has also noted that "[a]ccording to the agency manual, a few months should mean 'a period not to exceed six months.' There is no obvious inconsistency between an interpretation of less than six months and language calling for 'a few days to a few months,' so it is entitled to deference." *Fontenot v. Colvin*, 661 F. App'x 274, 277 n.1 (5th Cir. 2016) (per curiam).

And other district courts in this Circuit have noted that the general rule among federal courts appears to be that an individual within six months of an older age category presents a borderline age situation. *See Rudis v. U.S. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:20-cv-13, 2020 WL 7974323, at *5 (W.D. La. Dec. 9, 2020) (citing *Parker v. Colvin*, Civ. No. 5:13-cv-54, 2014 WL 4639452, at *12 (S.D. Miss. Sept. 16, 2014)), *report and recommendation adopted sub. nom.*, *Rudis v. Saul*, 2021 WL 45397 (W.D. La. Jan. 5, 2021); see also *Jackson v. Colvin*, 240 F. Supp.3d 593, 600 (E.D. Tex. 2017).

In this case, Plaintiff was born on July 3, 1965, Admin. R. [12] at 154, last insured on September 30, 2019, *id*. at 26, and the ALJ's decision was rendered on May 12, 2020, *id*. at 37. Contrary to Plaintiff's assertion,[12] because the date Plaintiff was last insured preceded the date the ALJ rendered a decision, the former is the relevant date for determining whether Plaintiff was within a few days to a few months of the next age category. *See* SSR 83-10, 1983 WL 31251 at *8 (Jan. 1, 1983)

---

[12] In his Briefs, Plaintiff argues that based on his age as of the date of the decision, the ALJ was required to consider whether a borderline age situation existed. Mem. [14] at 18-19; Resp. [21] at 5.

("When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. In these situations, the person's age at the time of decisionmaking is immaterial."). Thus, Plaintiff's relevant age is 54 years, 2 months, and 27 days.

Under the plain text of the applicable regulations, an ALJ must consider whether an older category applies only when the claimant is "within a few days to a few months" of that category. 20 C.F.R. § 404.1563(b). As previously explained, that phrase has generally been interpreted to mean within six months of the older age category. Plaintiff was more than nine months away from reaching the next age category at the date last insured; thus, Plaintiff was not "within a few days to a few months" of the next age category (*i.e.*, fifty-five (55) years of age and over). Because Plaintiff was not "within a few days to a few months" of the next age category, a borderline age situation did not exist. *See Jackson*, 240 F. Supp.3d at 600; *see also Fontenot*, 661 F. App'x at 277 n. 1. Therefore, the ALJ was not required to consider whether to apply a higher age category. *See Parker*, 2014 WL 4639452, at *13. Accordingly, no legal error exists, and remand is not warranted on this ground.[13]

## IV.   RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge recommends affirming the Acting Commissioner of Social Security's decision and dismissing this case with prejudice.

---

[13] To the extent Plaintiff suggests that determination is unsupported by substantial evidence, that assertion is without merit. The ALJ correctly determined that a 54-year-old individual like Plaintiff qualifies as "an individual closely approaching advanced age." Admin. R. [12] at 36 (citing 20 C.F.R. § 404.1563(a) (providing persons ages 50-54 qualify as a person closely approaching advanced age). Thus, substantial evidence supports the ALJ's step five age determination.

## V.    NOTICE OF THE RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 16th day of August 2022.

*s/ Bradley W. Rath*

HONORABLE BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

24